Court of Appeals. Good morning. Good morning. You may proceed. Thank you. May it please the Court, my name is David Smith and I'm here on behalf of the Succullos, Mark Succullo, in his individual and trustee capacity, and his wife, Dorothy. We're here through this appeal requesting the Court reverse the summary judgment entered in favor of the United States in this case. A little bit different than what you've heard this morning, so we're going to kind of change course a bit, but we believe that the Court erred in two regards in its summary judgment motion that was set forth in our initial brief. The first point of error was we believe the Court improperly applied Florida Statute 95-231. What the Court ultimately ruled was that a deed that was deficient in a lack of a subscribing witness was not cured by operation of the statute. Specifically to this case, what we have is a deed that was executed in 1998 on December 30th by Anthony Succullo, my client's father. He tried to deed the property to a trust to the benefit of his son, but he only had one witness, so the deed was defective. But by operation of 95-231, we believe the deed became valid by operation of law on December 30th, 2003. Now, that date is important as we get into the analysis of the Summerlin decision, where we believe— Just a quick factual question. Yes. Why is it that you included the property in the estate tax return in the first place? I mean, your position, I take it, is that as of 2003, it had effectively dropped out of the estate and been vested somewhere else. Why is it in the return? Yes, and I—you know, the case was decided on summary judgment, so we haven't had all the factual issues set forth as we would at trial. We moved—there was a stipulated set of facts that we put together for the Court that the government moved on. That was not one of the facts that was addressed in the stipulated facts. I can speculate as to why, but it was prepared, you know, by an accountant. My client was the administrator. He's surely not an attorney. He's not an accountant. You know, he's confessed to me that it was a mistake, but it's not an issue yet that's been presented to the Court, so we don't have that, you know, that determination, but that ultimately would be the testimony. Okay. So, what the Court did is the Court determined that that deed didn't become valid by operation of law, and the Court relied on the Davis v. Hinson case, saying that because the deed lacked a subscribing witness, it was never valid to begin with, and you can't use 95-231 to make something valid that never existed. We believe that the Court misplaced the holding in Hinson, and the reason being is because of the plain reading of the statute. The statute specifically states that five years after recording, when it appears the person owning the property attempted to convey it, then it shall be held to authorize the conveyance as if there had been no lack of witnesses. What happened in Hinson was the person that conveyed the property didn't own it. He tried to create title from something he never had, and that's where that language comes from. What's distinguishable in our case is Anthony Siculo owned the property. It's an undisputed fact on summary judgment. He attempted to convey it, just as the statute requires. A person owning a property attempts to convey it. What does the shall be held language in the statute mean? Don told me that it could mean one of two things. One, shall be held by a court of law. Two, shall be deemed, or something like that. Which of the two things do you think it means? Well, it's not as clear as it could be, but I think ultimately what the legislature was trying to do was clear up recording issues to make it easier for title insurance, you know, all these kinds of things to happen in commerce, rather than trying to have litigation every time there's an issue with a deed. So I think what the intent was, the legislature created the language shall be held, meaning by operation of law it happens without an adjudication that's necessary. More like deemed. That's the way it should be interpreted, although the language somewhat suggests you it even kind of contemplates it by saying at the end of the statute the deed would be deemed admissible as evidence. But the courts have not interpreted it that way. The two holdings that we cited to in our brief, both the district courts of appeals said as a matter of law that deed was valid. One of them had to do with how the jury was instructed. The courts said no, it was improper. It was deemed as a matter of law. It was a valid deed. The jury shouldn't have been instructed that way. And so based upon the way that the Florida courts are interpreting this statute, we believe just by operation of law that deed became valid and shall be held to be that way. Now, you can also look at it and you can say, well, the case that we brought to quiet... The deed was cured before the United States acquired its claim. That's correct. And that's the end of the case. Simple as that. If the court... The way the court interpreted Summerlin, absolutely. That's the end of the case. Summerlin doesn't even have to have an implication here. It was raised... The way the Ninth Circuit has construed similar statutes, right? Yes. If the right hasn't vested in the United States in the first instance, then Summerlin just doesn't apply. That's the holding of the Ninth Circuit. I think in another similar case. Perhaps. The U.S. versus... It's similar to the Ninth. Yeah. And what they were doing is they were interpreting the Summerlin versus the guarantee trust case. And the Ninth Circuit looked at them both and said, well, we've got countervailing principles here. One is if the United States comes into a claim, a valid claim, and a statute of limitations has not expired, and they sit on those rights, well, public policy says that they should still not... However, if the case or the claim already has a preexisting affirmity, then public policy doesn't kick in. Because the claim has already expired by the time the United States got it. And it's not a situation of the United States sitting on the claim and not being able to prosecute it. Because they can't revive a claim. There's no cases where Summerlin has pulled a claim from the past that never existed. That applies even if this Florida statute is just like a traditional statute of limitations. You don't have to get into any distinction between an ordinary statute of limitations and a curative statute. I don't know. I don't think there's any reason to even go there. I mean, from purposes of trying to compare them to guarantee trust or compare it to Bress and BCIR, you'll want to look at that analysis and say, well, it's a little different. The facts are a little different. But the bottom line is it's timing. Regardless of whether the United States got its claim through an estate tax lien or through an assignment of rights, as it has in other cases, or through subrogation, it doesn't matter. Because it's timing. It's when did they obtain that claim. So to get to your question of whether or not it's a traditional statute of limitations, it's not. But it's irrelevant from the standpoint of whether or not Summerlin even applies because it's a timing issue, not a labeling of whether it's a traditional statute of limitations. Yeah, when you say it's a timing issue, you mean it's a timing issue as to when the right vested, not as to when the claim was brought. That's right. That's correct. Absolutely. So we've kind of gotten into the Summerlin argument. The only other thing we would want to add is that even to the point of saying that it could have been a statute of limitations, it's not from the standpoint it doesn't void any claims. I mean, if the argument ultimately turns on that point, whether it's traditional, because the court did ask us to brief on that point, it's not because it doesn't void claims. It actually leaves open and contemplates claims. So it doesn't create a situation where Florida came in and said, you can't foreclose estate tax liens anymore unless you bring them within three years. That would be a totally different situation, where then the United States arguments would make sense here and say Summerlin barred that because Florida attempted to void foreclosure of estate tax liens by setting a time barrier. But that's not what we have. It's just not the situation. Thank you. Thank you. And you have reserved five minutes, counsel. Good morning. May it please the court. Julia Vetta for the United States. The statute did not operate to cure the defect in the Sequillo deed as a matter of law five years from the date of recordation. Had it done so, it would have been worded differently. It would not have required an adjudication. It would not have said shall be held. It would say after the running, it would be phrased, for example, like a marketable record title act or a statutory period for adverse possession, where at the conclusion of a period of time, rights vest. It does not vest rights. Why can't the phrase shall be held be read to mean shall be deemed or something like that? It exists in the ether, and it might require some court ultimately to recognize it. But in fact, the title is vested or the defect has been cured. That would render the shall be held language surplusage as well as the acknowledged provision about the evidentiary admissibility of deeds surplusage as well. The statute contemplates more thought being given to this, more analysis being done. And it doesn't speak to jurisdiction. It doesn't say what – I thought the whole point behind the statute was to eliminate these defects, the quiet title, and make it clear for all future parties who might find themselves in a conveyance trail. But as you read it, you read held to require an actual adjudication by some court somewhere when raised by some party, right? You mean it's got to go – somebody's got to go to court. It's not enough – the statute doesn't work by itself until somebody gets an adjudication from a court. That held means determined by a court, right? That's how you read it. The statute does not work by itself. That's correct. Held does not necessarily imply a court. It could be perhaps an administrative adjudication. Maybe there is something that could be done through a zoning board or through compromise through some nonjudicial entity. Held generally implies a holding by a court. But to Judge Newsom's point that if it should just be deemed, there's no judicial necessity there that a judge pass on that. So you – I just want to make sure I've got my head around this. So you agree that deemed is a valid interpretation of held? Because I think Judge Marcus's question is if it means deemed, then it means deemed to – sort of as to the world as a matter of law, by operation of law, without respect to an adjudication. We do not concede that those are equivalent terms, Your Honor. The Florida legislature could have said deemed or could have said shall have its intended effect, and there would be no deeming required. If five years had run – and this is where the time in question does become the key linchpin of this case. If at the conclusion of five years, no challenge has been raised to a facially defective deed, the legislature to remove all clouds on title and require no further adjudication or proceedings to ripen this deed into good title could have said so and could have said at the conclusion of five years, facial defects in a deed don't count. So if the language itself had said instead of the instrument shall be held to have purported – to have its purported effect to convey, if it had said instead shall be understood or deemed, it would be different. But using the word held requires an adjudication of some kind by some adjudicatory body, whether a court or an administrative body with the power to adjudicate. That is our position, Your Honor. Held requires a holding. Let me ask you this. Is there anything in Florida law that answers the question or illuminates what the statute meant in 95-231-1? The courts have held, as Your Honor noted, that the purpose of the statute was a general public policy purpose. It was not to protect defendants from claims against them or to guarantee the rights of plaintiffs. It is to clear general record title, to remove clouds on title so that subsequent purchasers are able to take good title to property despite potential defects in the chain of title earlier up. But that's where you get to the clock because good record title means one thing. If you are a purchaser for value, if you're 20 or 30 years out, you want to buy a piece of property and there's a bad deed back in history, you don't want that to affect your purchase. But it's not the running of this period specified by this statute, this five-year period, does not operate to render a federal claim against the property infirm at the conclusion of that period. First of all, for the reasons that the court has discerned, which is that the statute does not self-execute and does not ripen a deed into good title without further attention. A further proceeding is required. What it provides, as we discussed in our supplemental brief, is at best an affirmative defense in that proceeding that says your time's up. And because your time's up, you don't get to go back and say this deed fails because it's got a misnamed grantee, it's missing a second signatory, and any other patent defects that you can find on it. Let me ask you the question in a slightly different way. Does the Florida's deed curative provision, it's not about claims processing at all, is it really? It's not about the ability to assert a claim. It doesn't use the language claim at all. Rather, it seems to me to use language that talks about the legal status of a conveyancing instrument, providing that the instrument, quote, shall be held to have its purported effect after five years. Isn't that profoundly different from the kind of statute which was at issue in Summerlin which spoke about claims in as many words saying, quote, that a claim or demand upon an estate not so far within eight months from the time of first publication of notice to creditors shall be void? You follow the thrust of my question? You're saying isn't this a completely different animal from a non-state statute? Yeah. This doesn't strike me as a claims processing statute, but rather something that Florida created going to the substantive law of property. And if that's right, then how would Summerlin apply anyway? I think that is correct, and I take no issue with your characterization of the law. Summerlin applies anyway because of the clock, because the statute sets a clock running, and the running of the clock is dispositive of challenges under this statute. And that puts it in the Summerlin universe and the Guarantee Trust universe, which said, quod nullum tempus occurrit regi, which goes back to the 13th century, which says no clock can run against a sovereign claim asserted by a sovereign. And here we have a right that has arisen under federal law. We have a federal tax claim. No one is stepping into the shoes of someone trying to assert a claim in state law. All we are saying is that that clock can't run against the federal government, and because it never ran, the deed was never cured with respect to the claims of the federal government. See, the reason I come at it is let's flip the fact pattern around. I can imagine a circumstance where the federal government would want to take shelter in the operation of a five-year jurative rule. And we have done so. If the grantee of a technically deficient deed was the subject of a federal tax lien, the grantee would, of course, argue against the interests of the federal government that the five-year curative provision would not apply to the federal government's claim. It just strikes me that this looks a little different than the kind of thing they were talking about in Summerlin. The commonality with Summerlin inheres in how can state law constrain a statutory federal claim asserted by the United States. I think that there is a Florida case, which I'm not certain that we cited because it was not on point, but there was an issue where the government did, and the district court cited it in their opinion, as I recall a footnote, where a party to perhaps a condemnation proceeding, and I apologize that I'm not so strong on the fact that this particular case is we did not rely on it, but the federal government did use this curative provision offensively against a private party, but clocks do run against private parties. Clocks run under state law against state law rights. The federal government is not asserting a state law claim or a state law right. We are asserting a federal tax lien, and that federal tax lien, and we can say that it's an estate tax lien, and the five-year period of the statute ran during the decedent's lifetime, so we're not suggesting that our lien claim against his estate became co-late during his lifetime, but we cannot be foreclosed from reaching assets that would be within his gross estate, but for the running of a state law clock, which cannot bar a federal claim. So maybe I'm missing something, but don't we have like a chicken-and-egg problem here or something? Because you keep referring to this federal claim, federal claim, federal claim, federal claim. Your adversary says that claim arose at the earliest, if ever, in 2005 when father dies or in 2007 when you assert your claim, and he says in 2003, by operation of the statute, the asset dropped out of the estate. So we're sort of back to the beginning. I mean so I guess for me anyway, it's not a full answer to the questions that I have about the operation of the statute to continue to say the clock doesn't run against the United States because the clock doesn't run against the United States when the United States has a vested claim of right. So we're back to the beginning, whether or not under this statute the thing still existed in the estate when your claim ripened. Well, as I've said, we don't suggest that the claim was co-late during the decedent's lifetime. So on that, with that we agree. There was no federal tax lien on the estate of a living person in 2003. Right. But that does not defeat the claim ultimately because the government, when it seeks to assert that claim timely, when it does become co-late after the decedent's passing, has at its disposal all of the defenses and means of collection that would have been available to it at any point in time. A state law clock cannot foreclose those. So does that mean that on your understanding, even if the statute didn't say shall be held, and we didn't have our debate about whether that requires a court, but instead said shall be understood or shall be deemed or just shall have the effect, that even then, and we might be in richer agreement about whether the asset had dropped out of the estate, even then the U.S. could reach back into the estate? That would be a much harder claim for us to make. Would it be a possible claim for you to make? I'm not prepared to waive that at this moment. It doesn't feel possible to me right now. That's the right answer. I would need to dig a whole lot deeper if I were going to try to defend that claim. Right now on these facts, I could not. If it said shall be held, if it did not say shall be held, if it said shall have its effect, defects cured, then they're cured, and we don't have any reach back. There's no proceeding in which we could be availing ourselves or be denied an affirmative defense to that claim. The peg on which you rely is that in order to effect this cure, somebody would have had to bring a lawsuit and get a holding at the end of the five years that this deed is now effective. And that indeed is what happened. This is a quiet title claim that was brought in federal court. A quiet title claim could also have been brought in state court, but this was done under the federal sovereign immunity waiver for quiet title suits. When I used to check titles, when I would check a title, and there were often defects in titles going way back. And if my client had lived on the, or the grantor of my client, I'm checking it for the grantee, had lived on that property for 21 years or seven years with color of title, I would not think about having to go to court to get a decree about that. I would just buy the property for my grantee. And I do not think that property lawyers think they've got to go to court to execute statutes of this order. If we're talking about property law, title lawyers, title insurance companies would not think that, I don't think. Do you have any case that suggests that? And your case is about the purpose of it being to establish good title cuts against you. That title is established just like a prescription, just like the ordinary laws of prescription. You live on the property for 21 years or seven years with color of title, we don't worry about the prior defects. And yet proceedings are brought to determine that, and those statutes require that. And you can, but nobody's ever said you had to. And those statutes don't say you have to. This one says shall be held. Why? It's not clear. But this statute is phrased in its own way, and we can't get past that. We can't get around that. But no Florida courts ever held that. Florida courts have not had occasion to hold that. That's correct. That issue has not been presented to them. But this is what we're here looking at right now. We are in a federal quiet title suit involving a federal tax claim, a state law clock. Has any court in any jurisdiction held something like this? Not like you're urging? That a Florida... That a statute of this kind has to be ruled upon by a court to have any effect? I am not aware of... I cannot answer yes to that question, but what I am unaware of is how the curative statutes are phrased in other jurisdictions. Our position is uniform, nonetheless, which is that if it's a clock and it's running against the government, we will maintain that Summerlin protects the federal claim. Judge Newsom says that's an irrelevant issue. We're talking about Florida property law. Is this title good in December 2003, or is it not? It is not good until it is so held under the statute. So held means by a court or an administrative agency? By a competent body. Let me ask the question in a slightly different way. Does the operation of the rule in Summerlin here line up with the public policy the Supreme Court recognized that stood behind the rule? You understand why I ask the question? The avoidance of the statute of limitations avoids damage to the public purse from the government employee or employees who were late. They were sitting on their thumbs, they were late at the switch, and they didn't file on time. That was the concern the Supreme Court was obviously troubled by when it created, if you will, this rule out of whole cloth. Well, they created it. In any event, by contrast, the government's tax lien here would not have operated against Socolow's estate no matter what the timing of the government agents were. There's no argument here. Is there that the filing of the tax lien was untimely? It's not the agent's mistake but the independent operation of law on the deed that changed the ownership of Lot 59, right? I'm asking whether the public policy behind creating the rule pronounced in Summerlin would be properly applied to a case where the government agents were not tardy. They didn't make a mistake. They had nothing to do with the creation of the problem. When there's no policy problem to solve, as you've posited, as here the government agents acted promptly and timely and the assessment was made very shortly after the filing of the estate tax return, there is no policy rationale, as in Summerlin, for saying, we need to ignore the 13th century maxim that no clock runs against the sovereign because it makes good policy sense to protect the public fisc from the negligence of federal employees or from the inaction of federal employees, however excusable. As we've made clear, the estate tax lien only arises following the demise of the decedent. No amount of alacrity on the part of federal employees could have asserted it during his lifetime. That said, the rule is not solely founded on policy. The rule is founded over centuries on the privilege that the sovereign can only be time-constrained by the sovereign, which in this case is Congress, not the state law. And that is a far more profound policy rationale for Summerlin that it is a waiver of sovereign immunity when the federal government permits itself to be time-barred from asserting a claim or to be provided a time within which a valid claim must be asserted. And we note in our briefing that there are many of those that do constrain us here. There's a three-year statute of limitations on assessment under Section 6501. There's a 10-year statute of limitations on collection under Section 6502. There are protections for bona fide purchasers without notice if the government has failed to file a notice of federal tax lien under Section 6323, so clear title could convey. Even if we had made this assessment and had failed for whatever reason to file notice, we are subject to these levels of constraint, but not by Florida law, by federal law, by the provisions of the Internal Revenue Code and the Judicial Code and codes that Congress has enacted. And I see I've gone over time. All right. Thanks very much. Thank you. Mr. Smith, you've got the last word. I just want to take a moment to cite from the brief of the United States. They said, with respect to any private claimant, therefore Section 95231 would foreclose any challenge to the 1998 deed after the five-year limitation period had run. They concede that to any private claimant. That's exactly what we had in the guarantee trust case. You had a private claim that expired, and then the United States was assigned the claim, and the U.S. Supreme Court said they were late because they assigned the claim after the private claim had expired. In this case, the United States conceded it. Your understanding of the concession is that the claim expires without respect, and maybe this is your point, without respect to the holding of a court. It expires of its own force, collapses of its own weight. And they specifically said to any private claimant because they were excluding the United States government. But without respect to a quiet title action being brought. Exactly. Got it. So they've conceded that it operates by law. Contrary to what they've argued today in their brief, they've said that's the way it works. And they even went on to say we respectfully disagree with the district court's conclusion that the deed did not, that the absence of the required witness signature invalidated the 1998 deed beyond the reach of the statute. So they're conceding that point. Therefore, they have no case law to support what they're stating today. They've already conceded it in their briefs, and the prior district courts of appeal in Florida have all been consistent on the point that it operates by operation of law. None of those cases were adjudications on title defects to move forward to closing or something like that. No, they were issues. I asked her that question, and she said there are no cases either way. But you're saying there are cases that give validity to this statute even in the absence of court orders? Yes, yes. And you cite those in your brief? They are. The Earp decision, Hathaway v. Holloway, and Glanville v. Glanville, they're all in the brief. And in those cases, what they had were you had people that had deeded a property, and then they wanted to reform the deed, or they wanted rescission on that deed. And they said, well, it wasn't valid when I gave it, and now it's subsequently valid. So they fought over title issues, not for purposes of a closing, but they were disputing ownership of the property. And so those cases, the courts have all ruled consistently. The way that the statute works is by operation of law, not by the necessity of an adjudication. If that was the case, it would be in the statute. It would be clear. But the statute is clear enough that all the courts are ruling on it consistently. It's not ambiguous where the courts are trying to determine this issue. And the United States has already conceded that's the way it works. So we believe that the summary judgment again should be reversed, remanded with further proceedings, so that this matter may proceed to trial on the... You did not move for summary judgment. So at this stage, all we are doing is, if we agree with you, all we do is reverse the district judge's summary judgment for the government. That's correct. What would happen then if you were right that summary judgment had to be reversed? It would proceed to either a dispositive motion, another time period, or we'd proceed to trial, based on the court's case... Now, that's my question. Yeah, we elected... I'd like to know what your view is on that. I know it's not in front of me, but I'm curious whether you think it has to go back for a trial or not. Well, the dispositive motion deadline pursuant to the court's case management order has expired. We elected to not file a motion for summary judgment because at that time we made a decision we thought there may have been disputed issues of fact that would not have made it appropriate for our summary judgment. Now... Now you've changed your mind. Well, if I had an opportunity... No, I mean... Well, there has to be further proceedings because of the grantee problem. There's got to be a reformation of that grantee because the state of the trust is wrong. And that's part of... Well, the court... Yeah, the court ultimately concluded that that was a technical defect that was cured by the statute. So consistent with what we're asking for, having the witnesses cured by the statute, the courts have already said that that was a technical defect that would operate to be cured. I don't think the statute operates with respect to that. The statute is right limited. It deals with witness problems, but it doesn't deal with grantee problems. But that's not before us. That's not before us. I'd rather not comment on that point at this point. Thank you, and thank you both for a helpful argument. It's an interesting case. This court will be in recess until 9 a.m. tomorrow morning.